All right, come on up, take your time getting set up. I'll call our last case. It's number Mr. Gregg Good morning, your honors, and may it please the court. My name is Kevin Gregg and I represent the petitioner in this matter, Ishmahil Barrie. The court should vacate the agency's decision because the petitioner, Mr. Barrie, a lawful permanent resident of the United States, is not removable from the United States. He is not removable because his District of Columbia attempted sexual abuse conviction does not match the generic federal definition of aggravated felony rape as the agency held. The BIA's contrary finding is in conflict and contradicts the re-precedential circuit court decisions, the statutory text, contemporaneous dictionary definitions, the legislative history, and the relevant survey of state laws from 1996. If we agree with you on that first point, what other issues do you think we need to reach? Thank you, your honor. I believe that the court must and at least should reach the first issue in our briefs about whether a matter of Keeley itself remains a precedential agency decision. No, no, but I'm asking you to assume that you're going to prevail on issue one, which is that he has not been convicted of an aggravated felony. However, we get there, whether it's through our own analysis, following the Sixth and Fifth Circuits, or whatever. I'm assuming, I'm asking you to assume for purposes of the question that you prevail on the first issue, which is that your client was not convicted of an aggravated felony. What other issues, if any, do we then need to address? I do believe that the court needs to address whether a matter of Keeley remains a precedential agency decision under Loeb or Bright. If it existed as... Why do we have to decide that issue? I'm already telling you that you win for purposes of my question on issue one. Yes, your honor. What if we, let me make it easier. We say, assume that the BIA's decision in Keeley had not even existed. We're doing our own post-Loeb or Bright analysis. We're not giving deference to anybody. At most, give more deference. We come to the conclusion that attempted sexual misconduct, I think I have the language wrong, but attempted sexual misconduct or sexual assault under the DC Code is not an aggravated felony. So your client is not removable on that basis. What other issues do we need to address in this case? Whether a matter of Keeley is due skid more deference depends on whether it exists, your honor. And so we believe that needs to be addressed. And additionally, whether a matter of Keeley exists would then perpetually evade review of the agent. And so that is more of a should address. Once this court rules, if it were to rule that the BIA was wrong, at least in this case, that would seem to end the question of Keeley forever. Have I misunderstood that? That's really the point that Judge Jordan is asking. I don't think so. I think the question of Keeley was ended forever when the Sixth Circuit vacated it on direct – Well, that ended it forever in the Sixth Circuit. Our law couldn't be clearer that that's not the end of the story in this circuit or in any other circuit. I don't read the law the same way. That would be the case if a matter of Keeley had not been disagreed with, vacated on direct petition for review, and that's what the government relies on. All those cases are when, in a separate case like this case, the court were to disagree with matter of Keeley. But when an agency precedent is vacated on direct petition for review, as happened with matter of Keeley, it ceases to exist as a matter of law. Why does it matter for your client for us to say that or not say that if we hold – and again, I'm asking you to assume I'm not speaking for my colleagues and we haven't discussed this case. If we hold that your client has not been convicted of an aggravated felony and we agree with the Sixth and the Fifth Circuits on that point, what is left in this case to resolve? In the Eighth Circuit, Your Honor, and there would be nothing further for my client. So let's move on to the rest of what we do have here. Do you want to make any argument about the other matters? Do we have to address anything else? Cat relief, inadmissibility waivers? If the court were to find that Mr. Berry has not been convicted of an aggravated felony, we would ask the court to vacate the BIA's decision, and that would be the end of removal proceedings. And so going to relief or a convention against torture protection would not be relevant because there would no longer be removal. Right. Okay. So let's – Just wash out. Right. They would wash out if you prevailed on the aggravated felony issue. He would retain his green card. Yes, Your Honor. Let me take the question a step further. Assume, as Judge Jordan put the question, you were right about aggravated felony issue insofar as it went. The charge against you also included a charge of a crime of violence. They just didn't adjudicate that issue. Wouldn't the appropriate remedy be to vacate and remand? No. In this case, no, for a variety of reasons, Your Honor. As you mentioned, they brought a crime of violence charge, not an attempted crime of violence charge. Mr. Keeley has an attempt conviction, so I don't believe that charge is sustainable. But the government has waived that time and time again. And below the government, ICE was provided multiple opportunities to brief that issue. The agency was provided – Maybe I misapprehended. I thought the charge went there and the IJ said, I'll answer this question, therefore, I don't have to answer that one. That is what the immigration judge did. But before that happened, ICE waived – So you say they withdrew the other charge? They withdrew the crime involving moral turpitude. No, no, I understand the crime of moral turpitude. That was easy because it was more than five years. But I'm talking about a crime of violence. ICE did not waive – Did they withdraw their charge that he was also convicted of a crime of violence? They did not withdraw it, but they waived the opportunity. They waived – the BIA precedent is clear that ICE can waive arguments below, and ICE did that multiple times in this case. So the agency shouldn't be given another opportunity. So your view is ICE waived the alternative theory that they had charged him with an aggravated felony because it was a crime of violence. Do I have that right? Yes, Your Honor, by failing to brief it within the call-up deadline set by the immigration judge. If you vacate the removal order here, can they go back and recharge him as a crime of violence? I believe race judicata would prevent them, but that is not before the court. That is certainly what we would argue below. They could have. They did. They've waived it. They can't do it again. Okay, so that's what led me to my question about these other issues, cat relief and waiver of inadmissibility, is if we don't address them and they've been briefed on appeal, the removal may not be the end of the story. That is, we vacate it based on the aggravated felony charge as opposed to a crime of violence situation. And we've got here an unexhausted waiver of inadmissibility, shouldn't we at least say? I mean, that's not been exhausted, so we don't reach it, right? You didn't exhaust the waiver of inadmissibility. Well, as we argue in our papers, we believe we did exhaust it within Eleventh Circuit case law. I know that the government has argued that we failed to exhaust it by making the specific arguments that we're making on petition for review, but we have always argued the core issue that the agency failed to consider all evidence in totality and reached a legally erroneous extreme hardship conclusion. We believe the arguments we're making before the court. Okay, and so they denied cat relief too, and you say that was wrong. Yes, Your Honor. And we shouldn't reach that either? I mean, it seems like we've got to at least say you made these arguments and you're asking us not to reach them here or you want us to reach them here and remove them. It seems like we've got to say one or the other what we're doing with it. I would like the court to accept all of our arguments. Judge Jordan, I believe, was asking me do you have to. I don't believe you have to if you find he is not removable. But, yes, as it is all briefed and as I believe the agency seriously erred with their waiver and cat holdings, we would like the court to reach those decisions, those issues. Okay, but let's go we don't have to. I think that's clear. You don't have to reach something if you can decide the case on a narrow ground. And so if it's vacating the removal, then you don't have to go to waiver of admissibility and all that. I understand that. But shouldn't we at least acknowledge that you raised those claims? Yes, Your Honor. And that the IJA denied them and the BIA affirmed? Because I don't know whether you get a second bite at the apple of all of those way down the road, okay? You're saying the government doesn't get a second bite of the apple on brazing crime of violence because they've waived. And I don't know the answer. You get a second bite of the apple then on removal and admissibility and cat. I just don't know. We would urge the court to address, though, the waiver and the cat issue. The agency has made its views clear, I believe, on Convention Against Torture and Hardship. And I don't believe it's going to budge should it get it again. We believe that they are clearly that they have erred in multiple ways. And on Convention Against Torture, Your Honor, I think the starkest error was the immigration judge outright rejecting expert testimony and evidence that Mr. Berry will be indefinitely detained and tortured in a Sierra Leone prison immediately upon being removed to that country by an expert who was part of creating that prison system and trying and failing to reform it in Sierra Leone. And the reason the immigration judge rejected, completely did not consider it, and the BIA affirmed, was that the immigration judge believed that Mr. Berry could simply bribe his way out of jail and so didn't consider that he would be in jail. And as the Seventh Circuit has held in our papers, that is a completely improper analysis for the agency to do, that someone can commit a crime abroad to avoid torture so they don't get Convention Against Torture protection, even though, ironically enough, had they committed that crime in America, they would be barred from Convention Against Torture protection. So there are multiple errors in the waiver and the Convention Against Torture analysis that we do urge the court to reach. All right. Thank you very much. Thank you, Your Honor. Mr. Newell. Good morning. May I please the court? My name is Craig Newell and I'm here on behalf of the Attorney General. Mr. Berry's conviction for attempted first-degree sexual abuse under D.C. law constitutes an aggravated felony because the statute of conviction is a match to the generic definition of rape. And that generic definition does include nonconsensual digital and object penetration. Now? It includes that now or it included it back in 1996 when rape was added? Yes, it includes – the analysis should be as of the time of 1996 when it was added. And every authority I've looked at, including the cases cited in the briefs, say that in 1996 the majority overwhelming view was that rape did not include digital penetration. Well, if – okay. Tell me what's wrong about that assertion. What is incorrect? And it's the fundamental flaws in the other circuit court's decisions. And I understand that I'm seeking a circuit split. I understand the position. No, that's okay. Circuits get things wrong. Yes, and that is what has happened here because – okay. If you look at the different types of authorities that the Supreme Court looked at in Escobar-Quintana, you look at the Webster's Dictionary of Law from 1996. They did that for the sexual abuse of a minor provision that came in at the same time. There it said that rape met – most jurisdictions have broadened it with respect to both the victims, meaning both male and female can be victims, and the nature of the acts involved. It also recognized – and this is fundamental to conducting the multijurisdictional survey – is that many jurisdictions have just used a different classification, a different name, a different label for their rape term, one of them being sexual abuse or sexual assault. D.C. – if you look to D.C. Circuit – not D.C. Circuit. I'm sorry, D.C. Court of Appeals Law that's covering the D.C. law, they say we use first-degree sexual abuse and rape interchangeably. If you look in Madera-Keeley, there's a footnote where the board goes through 12 other states that also have changed the label to sexual assault, sexual battery. And there's cases where the courts there are saying this is just a new label. But that doesn't matter because you always have to try to match the conviction in question to the generic definition. Your problem is not with what states call this offense. Your problem is with the match. So tell me what authority stands for the proposition that in 1996 the generic definition of rape included digital penetration. If you look to all 50 states and you disregard the label and you mine down to the actus reus of all 50 states in D.C.'s main sex crime, it sets forth an actus reus of sexual penetration, including traditional intercourse, axisotomy, and these digital and object penetration. Thirty-five states included those within its context. You cannot just limit yourself to the less than majority of states that still decided to use the label rape. It confuses the enough. But you can't. You can't. I understand your position that we're not bound by the nomenclature that states use on one end of the scale. But at the other end of the scale, you're dealing with the generic definition of rape. That's the term of art that Congress used. Congress did not use sexual assault. It did not use sexual abuse. Let's go through sources. Did the model penal code include digital penetration as prohibited conduct for a rape offense in 1996? The model penal code version dates back way prior to that. I know. So that is not – you can't – You're stuck with that. Okay. The model penal code has been amended over years. The fact that it wasn't amended in 1996 is either good for you or bad for you. In this case, bad for you. So in 1996, the model penal code, as I understand it, did not include digital penetration as covered by a rape offense, right? That's correct about the model penal code. Black's Law Dictionary also did not include digital penetration as part of rape, right? Regarding Blake's – correct as in if you look at the 1990, which is six years prior. And the 1999. The 1999 does say that it has expanded to these unnatural acts of penetration. That's post-1996. I think this is a really hard case for you because what the BIA did in this case and in Keeley was assume that rape was sexual assault. And those are two very, very different offenses insofar as their generic definitions are concerned. They are not one and the same. I take it that some states have not used the same terminology. But Congress used rape. We've got to figure out what rape meant in 1996. And there's a line of Supreme Court cases that says that when Congress uses a term of art and doesn't say otherwise, it brings the so-called old soil with the term. And so I don't see any authority that stands for the proposition that generic rape in 1996 included digital penetration. Maybe I'm wrong. Maybe I've missed something, but I don't see anything. I think the old soil is brought in. The Supreme Court has also said that when common law terms are used, if there's evidence that they shouldn't be still construed as their common law elements, that should be considered. And the rape common law approach has been rendered obsolete by then. It was in the 60s and the 70s that the rape reform legislations went throughout these states. And they did choose these different labels. The problem with the sexual assault, the sexual battery, they're more amorphous. And so Congress chose rape because it wanted to mention or specify one particular crime opposed to sexual abuse of a minor where it wanted to cover a broad class of crimes against children. But to find out the exact contours of that rape, it is relevant to mine down past the label that the states had given and look at that. You just defeated your own argument by saying they used sexual assault of a minor child, a broader term. They could easily have done rape and sexual assault of a victim, but they didn't. They used rape. Can you use your time now to address what we should do? Let's assume we vacate the removal order.  And should we remand? Do you get a second bite at the apple on the crime of violence? And if so, why? Your opponent says you do not. Yes, Your Honor, I will address that. You should remand for further proceedings. Everyone gets a second bite at the apple. The crime of violence ground was just not addressed by the immigration judge because the rape ground was sufficient for the immigration judge. The DHS doesn't need to keep throwing in these crime of violence arguments when it's not at issue. Was there notice of removal? Did it have both grounds? Yes, there was a secondary notice of additional grounds. The one ground that could not be done anymore is the crime of violence one, and that, as a matter of law, is – You mean the crime of moral turpitude? Sorry, crime of moral – thank you for correcting me. The crime of moral turpitude. So that one's off the table. But you have – but the notice of removal is not enough because when you go to court on a removal docket, you have the burden of proving the aggravated felony in question, right? Correct. Before the judge says a word, before the IJ says a word, you have to go forward and say the government is moving for removal on these bases. What did you do with the crime of violence basis? That DHS put forth both the charge and put forth arguments on crime of violence and the rape, but not the – So he's just wrong in saying that you did not present arguments on the crime of violence issue? We did not present them on appeal because it was on administrative appeal because it wasn't that issue, but they were forced below the IJ just as a matter of judicial restraint. She just decided to resolve it on the rape conviction. He said – I heard what your colleague said. He said ICE waived the crime of violence by not briefing it. And I took that to mean – That was his basis for asserting there's no question it's in the notice. There's no question you said crime of violence was an independent basis. It had crime of moral turpitude too, but that was a mistake. Everybody agrees because of the five-year – more than five years had elapsed. But did you argue or brief crime of violence either to the immigration judge or the BIA? Before the immigration judge, yes. But before the board, no, because at that point in time, you had Mr. Berry's challenge of the immigration judge's decision, which was solely based on the rape aggravated felony ground. DHS doesn't mean – – before the immigration judge, but didn't address it before the BIA? Correct. That's the posture of how it was presented. Did you waive by failing to assert that before the BIA? No. That because the BIA – You had no reason to do it. We had no reason to do it. It just – that wasn't the issue on – And if they had disagreed on that reason, you would have fallen back on the first one. Right, right. The board said this is not a rape aggravated felony. They would have sent it back. Well, you – right. I mean the question is whether or not you could have argued for that second ground as an alternative ground without the IAJ having passed on it. And I don't know as a matter of BIA practice whether you could have done that or not. I'm not sure either as to that. Isn't it clear that if you – if the IJ did not address the notice prong based on a crime of violence that the BIA could not sui sponte, go off on crime? Wouldn't it have to vacate – wouldn't it have to remand and bring it back to the IJ? Maybe I'm wrong about that, but that was my understanding. Right. I think it would have to go back because it wasn't first resolved. Right, so the BIA would not on its own sui sponte address an alternate theory crime of violence if the IJ had not addressed it. I cannot say that they would never, but I don't – that is not the rule of practice. I guess my question, more awfully put, is could they have addressed it? We know, for example, this court couldn't go off on a ground that the BIA did not consider. Correct.  Yes. An agency says we decide the issue based on X. We think they're wrong about X, but we think there's another plausible basis. They might have done it on the basis of Y. We could not arrogate to ourselves the initial determination that Y is a sufficient ground and affirm on a ground not addressed, not ruled on by the BIA. That's clear. My question is does the same rule apply for the BIA, or as an administrative agency, could they go off on an independent ground not addressed by the IJ? And if the answer's you're not clear, that's fine too. The answer is it's unclear. I think the Chenery principle of that federal courts can only review the grounds the agency used, that doesn't translate onto the board. But the board has its own regulations about what it can and cannot review. The crime of violence ground, there's maybe potential because it could be a purely legal question and wouldn't need further fact-finding from an immigration judge. I don't want to stretch too far into it, but what I know is that ground is still there and it can be addressed on remand. It also didn't need to be charged as an attempted crime of violence, so it didn't need to be charged under F and then the U, the attempt conspiracy ground, because crime of violence in its definition says use or attempted use of physical force. Regarding if this court were to remand because it disagrees with us on the rape-aggravated felony, which I'm getting that sense, and you do not address the CAC deferral claim or the inability waiver, which you do not need to address, and it goes back to the board and if the board finds it not to be a crime of violence, and that's the end of the story. Mr. Berry is a lawful permanent resident without issue. If they do and then he files a new petition for review, he can bring forth all those other claims at that point in time as long as he raises them in his opening brief. If we don't reach those issues but we vacate the board's order in this case, everything as to the aggravated felony gets wiped out and everybody gets to start all over on the remaining crime of violence issue before the IJ again.  Which is another way of me asking the question this way. If we were to agree with him on the rape-aggravated felony issue, would you have us address the inadmissibility waiver issue and the CAC claim? The court does not. Do you see any reason why we would have to address that? There's no reason to address either one of those, but they are, as we argued in our briefs, two of his three challenges to the inadmissibility waiver are unexhausted and the third one. Right. Yeah, and so they're all put forth in the brief and there are no further questions. I appreciate your time. Thank you very much. All right. Thank you very much, Mr. Newell. Thank you, Your Honors. To be very clear to what we were talking about, Judge Hull, before, we are requesting a vacature from the court without remand. If the government wants to try to initiate removal proceedings again, I can't stop them from trying that. We will be filing motions to terminate. We don't believe it's proper for res judicata. But we are asking a vacature from this court. To answer your question, Judge Marcus, about whether the BIA could have issued a finding of removability in a crime of violence, they could have. As counsel began to discuss, the board is only limited to fact-finding, but pure issues of law, such as whether agreed-upon facts and an agreed-upon conviction match the legal definition of a crime of violence, are something that the BIA can always rule on. And in the 50 decisions that have been issued this year from the Board of Immigration Appeals, they have reached legal issues. Would this be a purely legal issue? Whether the conviction is a crime of violence, yes, it's a purely legal issue. There's no question about what his conviction is, what his convictions are. Yeah, but with all they have to do, if they think they're just affirming the IJ, why in the world would they take the time to do that? Why would we take the time to do these things we don't have to do? As a matter of practice, that is correct, Your Honor, but I think that that's a— I mean, I've seen BIA stuff for years, and they rarely go off on another ground, say, well, if we're wrong about that and the circuit court thinks so, we've got to now do this. They just don't do that. They go with the one the IJ does, and they rule on what the IJ does, and if they were to go crime of violence, they would never reach it. They'd just send it back to the IJ to do the work. Well, as a matter of practice, yes, I will say, Your Honor, having read every BIA— Isn't that kind of what they do? Well, having read every BIA decision issued this year, I will say that the BIA has reached legal issues and able to affirm an immigration judge and affirm removability when it has overturned the immigration case. But they didn't overturn it here. They affirmed it. That's the whole point. Yes, Your Honor. They had no reason to. The government talks about a second—I think it cuts both ways, though. If the board decides not to do that, they shouldn't get another bite of the apple. It's not a second bite of the apple. This would be the fifth agency's bite of the apple. They have been ignoring our aggravated felony arguments. On remand, they ignored them. They believed themselves bound by a matter of Keeley, which goes to your question, Judge Jordan, the problem that this is creating at the agency. They are ignoring our arguments, and with all of those arguments made before it, they declined to do anything. This would be the fifth opportunity to try to issue a removal order against Mr. Berry, and they should not be— Why were they obliged to brief that issue before the BIA when the IJ had ruled on the alternative ground? I don't believe they were obliged to brief it before the BIA. I believe they were obliged to brief it before the immigration judge, as they didn't do, and there was a discussion during master calendar. They say they did. He says that they did. See, I'd ask the question of him in two ways. One, what did you argue before the IJ? Two, what did you argue, brief and argue before the BIA? I thought I heard your colleague to say, before the IJ, we presented both theories. We urged both theories. We briefed both theories. I don't believe— You know what? Just bear with me. Before the BIA, we just addressed the theory that the immigration judge went off on because we had no reason to say or do anything else. You say that's wrong? Yes, we're in agreement on what happened before the BIA. I don't think my colleague is misrepresenting anything intentionally. I believe the record will show that crime of violence was not briefed before the immigration judge and that in the transcript it was not argued at the master calendar hearings. It was, of course, brought in the notice to appear and or the supplement charge. So crime of violence existed before the immigration judge, but unless I've missed something in the record, which is possible, I don't believe either of us are intentionally trying to mislead the court. But we have consistently argued that they have not briefed it. That has always been the argument. So what you say is fatal and the reason it's a waiver is because he didn't brief it before the IJ, not because he didn't brief it before the BIA. Yes, Your Honor. But we are dealing with the agency, and if the BIA wanted to— No, I understand the BIA could have done that if it chose. I understand your view on that. But the failure to brief it before the IJ is what you claim yields the conclusion of waiver. Yes, Your Honor. All right, Mr. Gregg, Mr. Newell, thank you both very much. We're in recess for today. Thank you.